

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00272-CV

---

IN THE INTEREST OF A.S., A
CHILD

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 323-99164-J13

----------

## MEMORANDUM OPINION[1]

----------

Appellant Father appeals the trial court's order terminating his parental rights to his son, A.S. In a single issue, Father argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights to A.S. is in A.S.'s best interest.[2] *See* Tex. Fam. Code Ann. § 161.001(2). We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]Father does not challenge the trial court's finding that he constructively abandoned A.S. *See* Tex. Fam. Code Ann. § 161.001(1)(N) (West 2014).

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001, .206(a) (West 2014); *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *E.N.C.*, 384 S.W.3d at 802.

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the challenged ground for termination was proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *See id.* "A lack of evidence does not constitute clear and convincing evidence." *E.N.C.*, 384 S.W.3d at 808.

In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that

2

termination of the parent-child relationship would be in the best interest of the child. Tex. Fam. Code Ann. § 161.001(2); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108. We are required to perform "an exacting review of the entire record" in determining whether the evidence is factually sufficient to support the termination of a parent-child relationship. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014).

We review the entire record to determine the child's best interest. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(A)  the desires of the child;

(B)  the emotional and physical needs of the child now and in the future;

(C)  the emotional and physical danger to the child now and in the future;

(D)  the parental abilities of the individuals seeking custody;

(E)  the programs available to assist these individuals to promote the best interest of the child;

(F)  the plans for the child by these individuals or by the agency seeking custody;

(G)  the stability of the home or proposed placement;

3

(H)     the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)     any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (citations omitted); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best interest finding, "we consider, among other evidence, the *Holley* factors"); *E.N.C.*, 384 S.W.3d at 807. These factors are not exhaustive; some listed factors may be inapplicable to some cases. *C.H.*, 89 S.W.3d at 27. There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).

CPS investigator Toni Cotten testified at the termination bench trial that she began an investigation involving A.S. and Mother in late August 2013 after DFPS received a referral regarding physical neglect—Mother was depressed and living on the streets with ten-month-old A.S., who appeared to be ill, was not clean, had a dirty diaper, and had a bottle with rancid contents.[3] Cotten located Mother, but not A.S., at a hotel. Mother said that A.S. was with Christina Tutt, a lady that Mother had recently met and who had agreed to help care for A.S. When confronted with the neglectful supervision allegations, Mother explained that she and A.S. had lost their housing in July 2013, that she and A.S. had been bouncing from shelter to shelter, and that an her uncle had helped her care for

---

[3]Mother was not present at trial, nor does she appeal the termination order, which terminated her parental rights to A.S.

4

A.S. for a period of time.[4]  Mother told Cotten that she did not know where Father was and that she was not in a relationship with him.

Although DFPS concluded that A.S. could be placed in a parental/child safety placement with Tutt, in September 2013, DFPS received a report alleging neglectful supervision against Tutt, and in October 2013, DFPS became A.S.'s temporary managing conservator.

Janine Brannon testified that she was the first caseworker assigned A.S.'s case. According to Brannon, in the four months that she was on the case, Mother visited A.S. only twice and Father did not visit A.S. during the time before he was incarcerated on February 5, 2014, for aggravated robbery. Brannon testified that Father did not demonstrate that he could provide A.S. with a safe place to live, that he could meet A.S.'s emotional and physical needs now and in the future, or that he could protect A.S. from emotional and physical danger now and in the future. In fact, Brannon could not testify that Father had any parenting skills adequate to care for A.S. because he never visited A.S. Brannon said that A.S. was doing "very well" in foster care during the time that she was assigned his case.

Andrew Calvin testified that he was the caseworker assigned to A.S.'s case between February and July 2014. According to Calvin, during his time as the caseworker, Mother visited A.S. once and Father was incarcerated the entire

---

[4]Mother has four other children; her parental rights to three of them had been terminated.

5

time. Calvin recalled one conversation that he had had with Mother in November 2013 in which she said that Father had been harassing her nonstop and that he had broken a playpen in anger during an argument. Calvin testified that A.S. had received some occupational, behavioral, and speech therapy and that he would continue to need therapy in the future. Calvin did not think that Mother or Father could provide the therapy that A.S. needed without DFPS's support, and he opined that Father, who did not express that he had any future plans for A.S., did not demonstrate that he had any parenting skills necessary to successfully parent A.S.

Naquea Walker was A.S.'s caseworker at the time of the termination trial. She testified that in the twelve months that A.S.'s case had been pending, Father had not worked any of his services or visited A.S. Walker explained that A.S. needs developmental aid, a stable home, and a nurturing environment and that the plan was for him to be adopted. Walker opined that it was in A.S.'s best interest that Father's parental rights be terminated.

Father, who was still incarcerated at the time of trial, testified that he wanted DFPS to remain A.S.'s temporary managing conservator until he could get on his feet, and he said that he could meet A.S.'s needs. On cross-examination, however, he acknowledged that he was not aware that A.S. required therapy and that he had no plan for how he would provide A.S. with therapy. At one point during direct examination, Father said that he did not care

6

if his rights were terminated—he was not going to sign his rights away. Father did not know when he would be released from jail.[5]

DFPS introduced evidence that Mother has a conviction for attempted prohibited sexual conduct. The information alleged that Mother "did then and there intentionally or knowingly engage in sexual intercourse with another person that [Mother] knew to be, without regard to legitimacy, the child of the actor's brother or sister of the whole or half-blood." The victim was Father. Father, who has two convictions for theft–$50 to $500 and a conviction for burglary of a building, refused to reveal how he is related to Mother.

Viewing the evidence under the appropriate standards of review, and considering any relevant nonexclusive *Holley* factors—including the emotional and physical needs of the child now and in the future, the parental abilities of those seeking custody, the plans for the child by these individuals and by the agency seeking custody, and the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one—we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of the parent-child relationship between Father and A.S. is in A.S.'s best interest. *See H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at

---

[5]Father states in his brief that he secured stable housing, was consistently employed during the pendency of the case, and completed his parenting plan. The record references that Father identifies to support those statements contain no such evidence, nor does any other part of the record.

7

573; *Holley*, 544 S.W.2d at 371–72.  We overrule Father's sole issue and affirm the trial court's termination order.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL:  GARDNER, WALKER, and MEIER, JJ.

DELIVERED:  February 5, 2015